## EX PARTE WILLIAM HAMILTON MOODY.

No. 23548. Delivered October 23, 1946.

The opinion states the case.

*Hughes & Monroe,* of Dallas, for appellant.

*Chaney & Davenport, Special Prosecutors,* of Dallas, and *Ernest S. Goens,* State's Attorney, of Austin, for the State.

GRAVES, Judge.

Relator was charged by indictment with the voluntary killing of Eugene L. Ballard with malice. Upon a hearing of a writ of habeas corpus before the District Judge, Winter King, to secure bail, he was remanded to the custody of the Dallas County Sheriff without bail. This appeal is from such judgment.

The Constitution of Texas, Article 1, Section 11, provides that "all prisoners shall be bailable by sufficient sureties, unless for capital offenses, when the proof is evident," etc. This provision of the Constitution was carried forward in the statute,

Article 5, C. C. P., in identical words except that the statute reads, *"where the proof is evident."* (Italics ours).

The facts before us show that relator and Ruby Alford, a woman, had been drinking, and were admitted to have been intoxicated. They lived at No. 1515 McKell Street in Dallas, two doors away from the home of deceased, who lived at No. 1507 of such street. About 1:30 o'clock in the morning, relator and his companion appeared at Mr. Ballard's house and created a disturbance by ringing the doorbell and loud talking, demanding admittance to such house, saying, "We live here. * * * Let us in this damn house or we will knock hell out of you." Relator and his companion were told that they did not live there, but lived two doors down the street at Mrs. Herr's house. Notwithstanding this, they continued their disturbance, stating that they lived there and still insisting in coming in the Ballard home. Mr. Ballard had been awakened by his daughters. He came to the door in his night clothes and refused to admit relator and the woman. Relator opened the screen door and endeavored to force his way into the house, but was pushed out and down by Mr. Ballard. Thereupon, the woman cursed Mr. Ballard and endeavored to enter the house and she was also pushed down. Relator then shot through the screen door and killed Mr. Ballard who was standing in his home by his daughters' side with the door slightly open. Relator then said, "Come on, honey," and he and the woman left, he saying, "Don't tell me this is not my house." Early that morning relator was apprehended by the peace officers. The woman was walking on Greenville Avenue, about seven o'clock, a. m., with a hand full of bills and a pistol with a discharged cartridge therein in her purse. Relator was not in her company at that time but was found in a field some 200 yards away from where the woman was apprehended. Relator made a statement soon after his arrest as follows:

"My name is William Hamilton Moody. My address is 1515 McKell Street. I am 42 years old. Last night Ruby Alford and myself were drinking at several different places. This morning we thought we were entering our home at 1515 McKell. We were both knocked down by some unknown man who I thought was trying to hijack me. I fired a shot at him after he knocked me down. I was lying flat on my back at the time I fired the shot.

"(Signed) William Hamilton Moody."

The proof is evident herein that relator killed Mr. Ballard while trying to force his way into the Ballard home. That he

was intoxicated at such time and believed this residence was his own is deducible from the evidence, as well as from the relator's brief and argument of counsel. We can then be safe in assuming that such intoxication is the excuse for his conduct; that because of his intoxication, he was mistaken as to his home, otherwise he would not have attempted such entry. Under Article 36, P. C. intoxication, short of temporary insanity, cannot be used as a defense for the commission of an offense; and as far as relator is concerned from this record, he stands as an intruder in Mr. Ballard's home.

We regard the opinion in Ex parte Evers, 29 Tex. Cr. App. 539, as decisive of the question now before us. The court was there considering the very issue of Evers' drunkenness upon whether he was entitled to bail. In the opinion written by Judge W. L. Davidson, the question was discussed at length. In deference to brevity, we refrain from quoting therefrom save as to the following very pertinent statement found on page 565:

"Intoxication, which is a wrong in and of itself, has never been held to have the effect of *being an excusing cause for another and greater wrong*. A party can not be heard to plead his first wrong or crime in justification of a subsequent offense. No man will be heard to take advantage of his own wrong." (Italics ours).

See also Ex parte Smith, 23 Tex. Cr. App. 100; Ex parte Cantu, 135 Tex. Cr. R. 281, 117 S. W. (2d) 1102; 5 Tex. Jur. p. 836, and cases there cited.

Of course, we have no way of knowing what evidence may be presented on the final trial, but must take the record as now before us. Therefrom it appears that relater thought some intruder was in his home refusing relator's entrance. This wrongful attitude was caused by relator's drunken condition and caused him to take the life of an innocent man, who was defending his own home against unlawful intrusion. The killing is herein shown to be without justification or excuse.

The judgment refusing bail is affirmed.